IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Phi Kappa Tau Chapter House | : | |
| Association of Miami University, *et al.*, | : | Case No. 1:12-cv-657 |
| | : | |
| Plaintiffs, | : | Chief Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER GRANTING DEFENDANT'S |
| | : | MOTION TO DISMISS PLAINTIFFS' |
| Miami University, | : | COMPLAINT WITH PREJUDICE and |
| | : | DENYING PLAINTIFFS' MOTION |
| Defendant. | : | FOR LEAVE TO FILE AMENDED |
| | : | COMPLAINT |

This matter is before the Court on Defendant Miami University's Motion to Dismiss Plaintiffs' Complaint With Prejudice (Doc. 6), filed October 26, 2012, and Plaintiffs' Motion for Leave to File Amended Complaint (Doc. 7), filed November 19, 2012.  For the reasons that follow, the Court GRANTS Defendant's Motion to Dismiss, DENIES Plaintiffs' Motion for Leave, and DISMISSES this case in its entirety.

I.      PROCEDURAL BACKGROUND

The instant case stems from an incident that occurred in August 2012 involving the shooting of fireworks between properties occupied by two fraternities at Miami University in Oxford, Ohio (the "University").  Officers from the City of Oxford Police and Fire Departments responded to the incident and entered the Phi Kappa Tau Fraternity house, located at 320 Talawanda Street, Oxford, Ohio to investigate the alleged shooting of fireworks from the property.  Once inside, officers seized fireworks, a bag of marijuana, two pipes, and several drivers' licenses.  On August 23, 2012, after learning of the incident and determining that Phi Kappa Tau had violated fire code standards and the Code of Student Conduct, the University

suspended the Phi Kappa Tau Fraternity and revoked the second-year student housing exemption for the fraternity's members, thereby requiring all second-year students living in the Phi Kappa Tau Fraternity house to move back into on-campus housing.

On August 28, 2012, Plaintiffs The Phi Kappa Tau Chapter House Association of Miami University, Alpha Chapter of the Phi Kappa Tau National Fraternity, and The Phi Kappa Tau Fraternity filed the instant case against Defendant Miami University asserting the following causes of action: (1) violation of 20 U.S.C. § 1221-1; (2) violation of Fourth, Eighth, and Fourteenth Amendments; (3) breach of contract; (4) tortious interference with business; (5) libel; and (6) malicious prosecution.  Along with their Complaint, Plaintiffs also filed a Motion for Temporary Restraining Order, requesting in part that the Court enjoin the University from requiring the second-year students residing at the Phi Kappa Tau Fraternity house to vacate the premises.  (Doc. 2.)  Following a hearing, this Court denied Plaintiffs' motion on the basis that they had not shown a likelihood of success on the merits of their claims.

Shortly thereafter, on September 4, 2012, Plaintiff The Phi Kappa Tau Fraternity voluntarily dismissed its claims, leaving The Phi Kappa Tau Chapter House Association of Miami University and Alpha Chapter of the Phi Kappa Tau National Fraternity (hereinafter collectively referred to as the "Fraternity") as the two remaining Plaintiffs.  On October 26, 2012, Defendant Miami University filed its Motion to Dismiss Plaintiffs' Complaint With Prejudice ("Motion to Dismiss"), and the following month, Plaintiffs filed their Motion for Leave to File Amended Complaint ("Motion for Leave").  Both motions are ripe for review.

**II.     ANALYSIS**

With its Motion to Dismiss, Defendant Miami University moves to dismiss Plaintiffs'
claims under Federal Rules of Civil Procedure 8(a), 12(b)(1), and 12(b)(6) for lack of
jurisdiction and failure to state a claim upon which relief can be granted.  Specifically,
Defendant argues that: (1) the Eleventh Amendment prohibits Plaintiffs from suing the
University in this Court because the University is an arm of the State of Ohio and therefore has
sovereign immunity; (2) to the extent that Plaintiffs seek monetary damages, civil actions for
money damages against the University, despite any other ancillary relief requested, must be
brought in the Ohio Court of Claims; (3) because the Court does not have subject matter
jurisdiction over any federal claims, the Court does not have supplemental jurisdiction over any
pendent state law claims; and (4) Plaintiffs' Complaint fails to state a claim upon which relief
can be granted.

Plaintiffs filed a response to Defendant's motion; however, they do not address any of the
substantive arguments made by Defendant.  Rather, Plaintiffs note that their proposed Amended
Complaint that would drop the University as a Defendant, and they therefore request that the
Court grant their Motion for Leave and deny as moot Defendant's Motion to Dismiss.
Defendant opposes Plaintiffs' Motion for Leave on the ground that the Amended Complaint
could not withstand a motion to dismiss under Federal Rules of Civil Procedure 8(a), 12(b)(1),
and 12(b)(6).  The Court considers both motions below.

**A.     Standards of Law**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint
for failure to state a claim upon which relief can be granted.  A district court "must read all well-

pleaded allegations of the complaint as true." *Weiner v. Klais and Co., Inc*., 108 F.3d 86, 88 (6th

Cir. 1997).  However, this tenet is inapplicable to legal conclusions, or legal conclusions

couched as factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

      To withstand a dismissal motion, a complaint "does not need detailed factual

allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of

the elements of a cause of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*

The Court does not require "heightened fact pleading of specifics, but only enough facts to state

a claim for relief that is plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "[O]nce a claim has

been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint."  *Twombly*, 550 U.S. at 563.

      The Supreme Court gave the following additional guidance in *Iqbal*:

> In keeping with these principles a court considering a motion to dismiss can
> choose to begin by identifying pleadings that, because they are no more than
> [legal] conclusions, are not entitled to the assumption of truth.  While legal
> conclusions can provide the framework of a complaint, they must be supported by
> factual allegations.  When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they plausibly give rise
> to an entitlement to relief.

556 U.S. at 679.

      Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a complaint

for lack of subject matter jurisdiction.  Rule 12(b)(1) motions to dismiss based on subject matter

jurisdiction generally come in two varieties – those which attack the complaint on its face and

4

those which attack the existence of subject matter jurisdiction in fact. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). In a "facial attack," the basis of the challenge is that a plaintiff has failed to faithfully recite all the jurisdictional predicates necessary for the Court to exercise subject matter jurisdiction over the matter. *Id*. at 1134-35. In contrast, a party makes a "factual attack" when the party challenges the actual existence of the jurisdiction even though the complaint contains the formal allegations necessary to invoke jurisdiction. *Id*. at 1134-35.

Under both forms of attack, the plaintiff has the burden of proving the existence of subject matter jurisdiction. *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). When reviewing a facial attack, the Court must consider the allegations contained in the complaint to be true and draw all reasonable inferences in the plaintiff's favor. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). When the Court reviews a factual attack on subject matter jurisdiction, no presumption of truthfulness applies to the factual allegations of the complaint. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). The Court is free to rely on affidavits or any other evidence to satisfy itself as to the existence of its power to hear the case. *Id*.

**B.      Defendant's Motion to Dismiss Plaintiffs' Original Complaint**

As stated above, in lieu of responding to the merits of Defendant Miami University's Motion to Dismiss, Plaintiffs request that the Court grant them leave to file an Amended Complaint and deny as moot Defendant's Motion to Dismiss. Plaintiffs by their own admission are "abandoning the originally filed Complaint," do not oppose the dismissal of their claims against Miami University, and do not name the University as a defendant in their proposed

Amended Complaint. Accordingly, the Court sees little reason not to grant the University's Motion to Dismiss. Rather than denying Defendant's motion as moot, as Plaintiffs request, this Court grants that motion for the reasons stated by Defendant in its Motion to Dismiss. The more important question, as discussed below, is whether Plaintiffs should be permitted to file their proposed Amended Complaint.

### C. Plaintiffs' Motion for Leave to File Proposed Amended Complaint

Plaintiffs' proposed Amended Complaint would add as plaintiffs seventy-eight members of the Alpha Chapter of the Phi Kappa Tau National Fraternity, drop Miami University as a defendant, and add in Miami University's place the following university officials, sued in both their individual and official capacities: Dr. David C. Hodge, President of Miami University; Dr. Gerri Susan Mosley-Howard, Associate Vice President and Dean of Students; Dr. Gwen Fears, Associate Dean of Students; and Susan R. Vaughn, Director of Ethics and Student Conflict Resolution. The claims asserted, which differ slightly from the original Complaint, include: (1) a claim under 42 U.S.C. § 1983 alleging violations of Plaintiffs' First, Fourth, Eighth, and Fourteenth Amendment rights (Claim 1); (2) a second cause of action re-alleging violations of Plaintiffs' First, Eighth, and Fourteenth amendment rights (Claim 2); (3) and state law claims for breach of contract, tortious interference with business, libel, and malicious prosecution (Claims 3-6). Like in the original Complaint, Plaintiffs continue to seek both monetary damages and injunctive relief.

Defendant Miami University opposes Plaintiffs' Motion for Leave on the basis that the proposed amendments would be futile. Specifically, the University argues that any official-capacity claims against university officials are equivalent to claims against the University and

6

therefore are marred by the same deficiencies alleged in Defendant's Motion to Dismiss. The University further alleges that the individual-capacity claims are barred either by Eleventh Amendment immunity or by Ohio law requiring that those claims first be brought in the Ohio Court of Claims. In the alternative, the University argues that Plaintiffs' proposed Amended Complaint fails to state a claim for violations of Plaintiffs' constitutional rights and the university officials would be entitled to qualified immunity with regard to those claims.

Plaintiffs filed no reply to Defendant's response. Accordingly, Plaintiffs have made no substantive argument before this Court in support of either their original Complaint or their proposed Amended Complaint. Instead, they rely solely on the general proposition that leave to amend under Federal Rule of Civil Procedure 15(a) shall be "freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962), *cited in* Doc. 8 at 2, Page ID # 102. There are, however, exceptions to that standard, such as where the proposed amendment is futile. *See id.* "A court is within its discretion to refuse amendment and dismiss the complaint if it 'concludes that the pleading as amended could not withstand a motion to dismiss.'" *Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992) (quoting *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986)). This Court must determine whether that is the case with regard to Plaintiffs' proposed Amended Complaint.

### 1. Eleventh Amendment Immunity

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of a Foreign State." U.S. Const. amend. XI. With regard to the scope of Eleventh Amendment immunity, the Sixth

Circuit has repeatedly recognized the following:

> This immunity is far reaching. It bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100–01 (1984), by citizens of another state, foreigners or its own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890). The amendment also bars suits for monetary relief against state officials sued in their official capacity. However, the amendment does not preclude actions against state officials sued in their official capacity for prospective injunctive or declaratory relief. *Ex Parte Young*, 209 U.S. 123 (1908).

*Thiokol Corp. v. Dep't of Treas.*, 987 F.2d 376, 381 (6th Cir. 1993); *see also Sefa v. Kentucky*, No. 12–5455, 2013 WL 69337, at *1 (6th Cir. 2013); *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012).[1]

Miami University is a public university in the state of Ohio, and therefore qualifies as an arm of the state. *See McCormick*, 693 F.3d at 661 (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000)). As a result, any claims against Miami University would be barred by Eleventh Amendment immunity. *Id.*; *see also Johnson*, 215 F.3d at 571 (finding that claims brought against a public university pursuant to 42 U.S.C. § 1981 and § 1983 were barred under the Eleventh Amendment because "it is well-settled that a plaintiff is precluded from directly suing a State in federal court on these claims"). Additionally, to the extent that Plaintiffs seek to sue university officials in their official capacity under federal law, any claims for monetary or other retrospective relief would be barred.[2] *See McKay v. Thompson*, 226 F.3d 752,

---

[1] "The Eleventh Amendment has no application under two circumstances: 1) where a state has itself waived its immunity from federal suit; and 2) where Congress has abrogated the states' immunity." *Thiokol Corp.*, 987 F.2d at 381. In this case, Plaintiffs make no argument that either of those exceptions is applicable.

[2] The Supreme Court has held that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491

757 (6th Cir. 2000) ("[t]he Eleventh Amendment permits prospective injunctive relief, but not damage awards, for suits against individuals in their official capacities."); *MacDonald v. Village of Northport, Mich.*, 164 F.3d 964, 971 (6th Cir. 1999) ("[T]he Eleventh Amendment bars federal jurisdiction over suits against state officials when the relief sought is retrospective or compensatory in nature."); *Baba-Singhri v. Central State Univ.*, No. 3:03cv429, 2008 WL 656497, at *5 (S.D. Ohio Mar. 10, 2008).

The Eleventh Amendment does not bar official-capacity claims for *prospective* injunctive relief.[3]  However, in this case, there would be no such relief available to Plaintiffs based on the claims proposed in the Amended Complaint.  Though Plaintiffs' prayer for injunctive relief is vague, Plaintiffs do not appear to ask this Court to require the proposed defendants to refrain from violating federal law going forward.  Rather, Plaintiffs ask this Court to provide unspecified injunctive relief with regard to actions that the University and/or those officials have

---

U.S. 58, 71 (1989).  However, in the same opinion, the Supreme Court noted that officials may still be sued for injunctive relief because "'official capacity' actions for prospective relief are not treated as actions against the State."  *Id*. at 71 n.10.

[3]  The Supreme Court has discussed the basis for the prospective relief exception as follows:

> This doctrine has existed alongside our sovereign-immunity jurisprudence for more than a century, accepted as necessary to permit the federal courts to vindicate federal rights.  It rests on the premise—less delicately called a "fiction," —that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes.  The doctrine is limited to that precise situation, and does not apply when the state is the real, substantial party in interest, as when the judgment sought would expend itself on the public treasury or domain, or interfere with public administration.

*Virginia Office for Protection and Advocacy v. Stewart*, 131 S.Ct. 1632, 1638 (2011) (internal citations and quotation marks omitted).

already taken.[4]  Therefore, in this case, Plaintiffs' official-capacity federal law claims would be barred.

As to Plaintiffs' proposed state law claims, the Eleventh Amendment would bar all official-capacity claims against the university officials regardless of the relief sought.  *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (finding no prospective relief exception to Eleventh Amendment immunity when state officials are sued on the basis of state law); *McCormick*, 693 F.3d at 664 ("Congress has not abrogated the Eleventh Amendment for state law claims, . . . nor has Ohio waived sovereign immunity."); *Heike v. Guevara*, 654 F. Supp. 2d 658, 671 (E.D. Mich. 2009) ("[S]overeign immunity bars suits in federal court against state officials acting in their official capacity for violations of state law, regardless of the relief sought.").

Therefore, the only proposed claims that could survive Eleventh Amendment immunity would be Plaintiffs' individual-capacity state and federal law claims.  As discussed below, those claims are futile for other reasons.

## 2.    State Law Individual-Capacity Claims

Defendant Miami University argues that any state law claims brought against university officials that are not barred by the Eleventh Amendment would be barred under Ohio Revised Code §§ 9.86 and 2743.02(F).  Section 9.86 confers immunity on state officers and employees in any civil action unless the officer or employee acted "manifestly outside the scope of his employment or official responsibilities," or "with malicious purpose, in bad faith, or in a wanton

---

[4] Plaintiffs' prayer for injunctive relief merely requests "[t]he issuance of a temporary restraining order and permanent injunction as to conduct complained of herein towards Defendant."  (Doc. 7-1 at 26, Page ID # 99.)

or reckless manner." Section 2743.02(F) provides that any civil action alleging that a state officer or employee is not entitled to personal immunity under § 9.86 "shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction" to first make such a determination. As the Sixth Circuit noted in *McCormick*, 693 F.3d at 665, the two "provisions work in tandem":

> Ohio law requires that, as a condition precedent to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in Revised Code section 9.86. Prior to that condition being satisfied, then, there is no claim under Ohio law upon which relief may be granted against state employees in their individual capacities.

*Id*. (quoting *Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989)). Pursuant to those statutes, this Court lacks jurisdiction to hear state law claims against Ohio public university officials until the Ohio Court of Claims has first determined that the officials are not entitled to immunity. *See id.* As there is no allegation or evidence in this case that the Ohio Court of Claims has made such a determination with regard to the proposed new defendants in this case, Plaintiffs' state law claims (Claims 3 through 6) against them could not survive a motion to dismiss.

### 3. Remaining Federal Claims

That conclusion leaves only Plaintiffs' proposed individual-capacity federal claims. Defendant alleges that those claims could not withstand a motion to dismiss for failure to state a claim because Plaintiffs' allegations do not demonstrate a deprivation of their constitutional rights and because the university officials would have qualified immunity as to all individual-capacity claims.

### a. No Deprivation of Rights

#### i. *Factual Allegations*

11

The factual allegations forming the basis for Plaintiffs' proposed Amended Complaint may be summarized as follows:

- The proposed Amended Complaint includes several excerpts of the Miami University Code of Student Conduct, which Plaintiffs allege describe the procedures the University generally follows when determining whether to suspend a student organization, which can occur "whenever the Dean of Students or designee determines that the continued presence of the student, student organization, fraternity or sorority on the University campus poses a significant risk of substantial harm to the safety of the student, student organization, fraternity or sorority, or to others, to the stability or continuance of normal University functions, or to property." (Doc. 7-1 at 14–15, Page ID # 87–88.)  The Code requires that the organization be given notice and an opportunity to respond and sets forth general procedures with regard to each step of the disciplinary process.  (*See id*. at 14–16, Page ID # 87–89.)

- The incident that led to the suspension in this case involved the shooting of fireworks between the Phi Kappa Tau Fraternity house and another house, resulting in an investigation by the City of Oxford Police and Fire Departments.  While on the premises, police officers seized several items including unclassified fireworks, a baggy of marijuana, two pipes, and several drivers license.[5]

- On August 19, 2012, the day after the incident, Ross Piermarini, President of Plaintiff Alpha Chapter of the Phi Kappa Tau National Fraternity notified Jennifer Levering,

---

[5] As of the filing of the proposed Amended Complaint, no criminal charges had been issued for the Fraternity in relation to the incident.

Director of the Cliff Alexander Office of Fraternity and Sorority Life and Leadership at Miami University, of the occurrence of the incident.

- On August 21, 2012, Directors Levering and Vaughn met with Piermarini, F. Harrison Green, President of the Phi Kappa Tau Chapter House Association of Miami University, and Tim Hudson of the Phi Kappa Tau Fraternity to discuss the August 19, 2012 incident. During that meeting, Vaughn allegedly "stated that complaints had been made regarding the conduct of the fraternity and its members through accounts received from the newspapers." (*Id*. at 11, Page ID #84.)  Vaughn acknowledged that she had not received any reports from the Oxford Police or Fire Departments; nor had she received any information regarding charges, citations or any other complaints being issued by those departments.  Vaughn informed those present at the meeting that "there would be a meeting with the Dean of Students of Miami University for the purpose of issuing a summary suspension to be effective shortly after the meeting."  (*Id*.)

- Following that meeting, the Associate Dean of Students, Dr. Fears, held a meeting on August 23, 2012, which Piermarini and other representatives of the Fraternity attended. During that meeting, Dr. Fears announced the procedures to be followed and actions that would be taken following the issuance of a summary suspension.

- At approximately 4:30 p.m. that day, the Associate Vice President and Dean of Students, Dr. Mosley-Howard, issued a letter stating that the University had "held a summary suspension hearing to consider whether the behavior of the Phi Kappa Tau Chapter posed a significant risk of substantial harm to [its members] or others [or was] disruptive in the functioning of the institution," and that it had "been alleged that the Chapter violated the

Fire Code Standards and the Code of Student Conduct – prohibited use of drugs (106A) and possession of drug paraphernalia (106B)." (*Id*. at 12, Page ID # 85.)  The letter also indicated that the Chapter would be suspended "until the case is adjudicated to the Office of Ethics and Student Conflict Resolutions," and advised that second-year students living in the house under the fraternity exemptions would be required to move back into campus housing no later than Tuesday, August 28, 2012. (*Id*.)

• On August 24, 2012, Green and two other representatives of the Fraternity met with Dr. Barbara Jones, Vice President of Student Affairs at Miami University.  During that meeting, Dr. Jones allegedly stated that the University had not in the past dealt with circumstances involving the summary suspension of a fraternity and the withdrawal of the second-year housing exemption from members of the fraternity.  She further "indicated [that] in the past when a fraternity had been rejected for a second-year student exemption," the "fraternal organization was given the opportunity to meet before a panel to seek reconsideration of said status." (*Id*. at 13, Page ID # 86.)

• On August 27, 2012, C. Steven Hartman of the Phi Kappa Tau Fraternity received a letter from Dr. Mosley-Howard, wherein she acknowledged the requested follow-up by Dr. Jones.  Dr. Mosley-Howard stated that she had re-examined the threshold used to summarily suspend the Fraternity.  She explained that in reaching that decision, she and Dr. Fears balanced the responsibilities they have to adhere to institutional policy, safe-guard the learning environment and the individual well being of the University's students, uphold student accountability, and protect institutional functioning.  Based on those considerations, they were compelled to uphold the suspension.

14

- Of the eighty-two members of the Alpha Chapter of Phi Kappa Tau Fraternity, nineteen were living at the fraternity house at the time of the summary suspension.  Due to the revocation of the housing exemption for second-year students, seventeen members of the fraternity have been displaced and forced to reside in Miami University housing at considerable additional expense.  Each of the seventeen members of the fraternity had executed lease agreements with Alpha Chapter of Phi Kappa Tau Fraternity for the academic year of 2012-2013 in the amount of $8,800.  The Alpha Chapter of Phi Kappa Tau leased the premises at 320 Talawanda Road, Oxford, Ohio from the Phi Kappa Tau Chapter House Association of Miami University for the academic year 2012-13 with options for the academic years 2013-2014, 2014-2015 and 2015-2016 in the amount of $88,000 per year.

- On September 11, 2012, Vaughn, acting on behalf of Miami University's Office of Ethics and Student Conflict Resolution, caused charges to be issued against the Alpha Chapter of Phi Kappa Tau "stating violations of organizational liability under Prohibited Possession of Drugs (106A), Possession of Drug Paraphernalia (106B), Weapons (107), and Disorderly Conduct (113)."  (*Id*. at 16, Page ID # 89.)

- On September 18, 2012, a hearing was held before Dr. Michael Curme, the designated hearing officer appointed by the Office of Ethics and Student Conflict Resolution.  The Fraternity sought to continue the hearing because the Fraternity intended to present the testimony of individual members who had acknowledged responsibility for the allegations made against the Fraternity, but while there remained the possibility that criminal charges would issue, those individuals desired to exercise their Fifth

15

Amendment rights. The Fraternity submitted that the delay would not cause any damage to the University given that the Fraternity would remain under a summary suspension pending the outcome of the allegations. However, the requested continuance was denied, materially damaging the Fraternity's defense of the allegations against it.

- The September 18, 2012 hearing was held jointly with Alpha Chapter of Phi Kappa Tau Fraternity and Sigma Alpha Epsilon Fraternity under the assumption that there had been a fireworks war between the two fraternity neighbors. In addition to requesting a continuance, the Alpha Chapter of Phi Kappa Tau also had requested a separation of the hearings based on its belief that there was not a commonality of the charges.[6] The charges were based upon an incident report from the City of Oxford Police Department that was incomplete at the time, but merely alleged that while officers were responding to a fire alarm at Sigma Alpha Epsilon Fraternity house, they observed fireworks being shot from one third floor window of the Phi Kappa Tau fraternity house.

- During the course of the hearing before Dr. Curme, Vaughn was not required to present any evidence other than the proposed charge. The hearing allegedly "was conducted without the establishment of a burden of proof and the weight of the evidence in determination of the resulting findings." (*Id*. at 18, Page ID # 91.)

- Dr. Curme found the Alpha Chapter of Phi Kappa Tau Fraternity to be responsible for organizational liability under the following sections: Prohibited Possession of Drugs (106A), based on the organization allegedly possessing a bag of suspected marijuana and

---

[6] The proposed Amended Complaint does not indicate whether this request was granted or denied.

16

suspected marijuana laced brownies; Possession of Drug Paraphernalia (106B), based on the organization allegedly possessing three pipes that are used to inhale or ingest a controlled substance; Weapons (107), based on the organization allegedly possessing a dangerous weapon, specifically fireworks; and, Disorderly Conduct (113), based on the organization firing off the fireworks in breach of the peace.

- Dr. Curme deferred to the Office of Ethics and Student Conflict Resolution for the penalty phase of the hearing.  That Office ultimately banned the Alpha Chapter of Phi Kappa Tau Fraternity from the Miami University campus and from participation in university facilities for a four year period.

- The Fraternity appealed the decision to the University Board of Appeals based upon new evidence, alleged procedural defects, and an improper sanction. The Board of Appeals found that there was no basis for the appeal as to the claims of new evidence or procedural defects, but it did reduce the penalty to an eighteen-month ban beginning on the date of the board's findings.

- In accordance with Code of Student Conduct, the Fraternity has submitted a subsequent appeal for consideration by Vice President of Student Affairs, Dr. Barbara Jones. As of the date of filing the proposed Amended Complaint, there had been no response.

### ii.    The Asserted Federal Claims

Claims 1 and 2 of Plaintiffs' proposed Amended Complaint allege a hodgepodge of violations to their constitutional rights.  In Claim 2, Plaintiffs assert violations of the First, Fourth, Eighth and Fourteenth Amendments based on alleged deprivations of "their rights to an equal opportunity education, interference with interstate commerce, and freedom of choice as

17

provided for in provisions of Ohio law which is invoked through senate jurisdiction of this court." (Id. at 21–22, Page ID # 93–94.) To the extent that Plaintiffs could prove the existence of the rights alleged, the facts alleged do not demonstrate any interference with interstate commerce or with the Plaintiffs' education, and Plaintiffs' vague reference to a deprivation of "freedom of choice" under "Ohio law" cannot form the basis for a claim under the United States Constitution. Accordingly, Claim 2 likely would not survive a motion to dismiss for failure to state a claim.

Claim 1 requires a somewhat more in-depth examination. Plaintiffs assert in that claim that through the above-described acts, Dr. Hodge, Dr. Mosley-Howard, Dr. Fears, and Vaughn deprived Plaintiffs of their rights to be secure in their person and property, to privacy, to be free from interference in a leasehold, to freedom of association, to freedom of expression, to freedom from unreasonable seizure of property, to freedom from malicious prosecution, and to due process of law, all in violation of the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

Plaintiffs cannot state a claim under the Eighth Amendment, which provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S.C.A. Const. Amend. VIII. Plaintiffs do not specify under which clause of that Amendment their claims arise. Even assuming that the Eighth Amendment may apply to administrative penalties imposed by a public university, the facts alleged by Plaintiffs neither demonstrate cruel and unusual punishment or the type of government-imposed monetary fine or forfeiture of property that would amount to an "excessive fine" of the type prohibited by the Eighth Amendment. *See Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*,

492 U.S. 257, 268 (1989) (finding that "Excessive Fines Clause was intended to limit only those fines directly imposed by, and payable to, the government"); *United States v. Bajakajian*, 524 U.S. 321, 334 (1998) ("A punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportionate to the gravity of a defendant's offense.").

Plaintiffs similarly fail to state a claim against the university officials under the Fourth Amendment. There is no allegation that those officials, acting in their individual or official capacities, violated Plaintiffs' rights to be free from unreasonable searches and seizures. Neither the University nor its officials "seized" any property belonging to Plaintiffs by banning the Fraternity for a limited period of time or by requiring second-year students to live on campus. Nor is there any allegation that any of the Plaintiffs themselves were unlawfully "seized." Plaintiffs likewise cannot assert a malicious prosecution claim because there is no allegation that any criminal charges have been brought against any of the Plaintiffs.

As to the proposed First Amendment freedom of expression and association claims, Defendant Miami University cites Second Circuit and Third Circuit cases in which courts rejected similar claims. *See Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 438–39 (3d Cir. 2000) (see below); *Chi Iota Colony of Alpha Epsilon Pi Fraternity v. City Univ. of N.Y.*, 502 F.3d 136 (2d Cir. 2007) (reversing the district court and vacating a district court injunction that prohibited the university from imposing a gender-based nondiscrimination policy on the all-male fraternity where the fraternity members failed to demonstrate a constitutionally protected associational interest and where the denial of official recognition by the university as a campus organization would not prevent the fraternity from continuing to exist, to hold intimate meetings, to exclude women, or to exercise selectivity in choosing new members).

19

In *Pi Lambda Phi Fraternity*, the University of Pittsburgh Chapter of the Pi Lambda Phi Fraternity sued the university and various individual defendants after the university stripped the chapter of its status as a recognized student organization in response to several fraternity members being arrested in a drug raid at the chapter's fraternity house.  229 F.3d at 438.  The fraternity chapter and several fraternity members alleged violations of their rights of association under the First Amendment.  *Id*. at 440.  The district court granted summary judgment to the defendants, and the Third Circuit upheld that decision on the following bases: (1) the fraternity chapter could not demonstrate a protected intimate association because of the fraternity's size (approximately eighty members at any given time), membership criteria, and openness to the public; (2) the fraternity chapter failed to demonstrate that it engaged in any form of expressive association, as there was nothing in the record to show that the chapter ever took a public stance on any issue of public political, social, or cultural importance; and (3) even if the fraternity chapter did exercise rights of protected expressive association, the effect of the university's action did not have a close enough relationship to the alleged expressive activities to rise to the level of a constitutional violation, which would require more than "an indirect and attenuated effect on the [c]hapter's expressive activities."  *Id*. at 438, 442, 444.  In finding as such, the court noted that "a university has the power to withdraw recognition if an organization breaks university rules."  *Id*. at 445 (citing *Healy v. James*, 408 U.S. 169, 194 n.24 (1972)).

In this case, Plaintiffs make no factual allegations that would establish that the Fraternity has a right of intimate or expressive association or that would demonstrate unconstitutional infringement upon those rights.  Nor have they alleged any facts indicating that the University or the named officials' actions have interfered with their freedom of expression or speech.

Accordingly, Plaintiffs do not state a claim under the First Amendment.

This leaves Plaintiffs' alleged violation of their due process rights. To the extent that Plaintiffs attempt to assert a procedural due process claim, they would need to allege facts suggesting "(1) a cognizable 'liberty' or 'property' interest; (2) the deprivation of that interest by 'some form of state action'; and (3) that the procedures employed were constitutionally inadequate." *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009) (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988)). Here, Plaintiffs allege deficiencies in the disciplinary procedures employed by the University. Additionally, the alleged facts also may identify at least one property interest related to the Plaintiffs' leases for the fraternity house. *See EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 857 (6th Cir. 2012) (recognizing the right to contract under Ohio law as a protectable property interest). Nonetheless, as discussed below, even if Plaintiffs could state a procedural due process claim based on the facts alleged, the university officials Plaintiffs propose to sue would be entitled to qualified immunity as to such claims.

### b.     Qualified Immunity

The Sixth Circuit recently summarized the standards for qualified immunity as follows:

> Government officials are immune from civil liability under 42 U.S.C. § 1983 when performing discretionary duties, provided their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity seeks to prevent government officials, such as police officers, from being held liable for reasonable mistakes of law, fact, or mixed questions of law and fact made while acting within their scope of authority. To determine whether qualified immunity shields a government official's action from § 1983 liability, we apply the two-prong *Saucier* test and inquire (1) whether the officer violated a constitutional right and (2) if so, whether that constitutional right was clearly established such that a "reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (citation and internal quotation marks omitted), *abrogated*

21

*in part by Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Once a defendant raises qualified immunity, the burden is on the plaintiff to demonstrate that the official [is] not entitled to qualified immunity by alleging facts sufficient to indicate that the [government official's] act in question violated clearly established law at the time the act was committed. To defeat the qualified immunity bar, a plaintiff must present evidence sufficient to create a genuine issue as to whether the defendant committed the acts that violated the law.

*Simmonds v. Genesee Cnty.*, 682 F.3d 438, 443–44 (6th Cir. 2012) (internal citations and quotation marks omitted).

In this case, Defendant Miami University claims the university officials named as defendants in the Proposed Amended Complaint would be entitled to qualified immunity as to the federal individual-capacity claims. Plaintiffs have made no response to that assertion of immunity. The only potentially cognizable claim to emerge from Plaintiffs' proposed Amended Complaint is the procedural due process claim. Though somewhat unclear, the Court assumes Plaintiffs allege a due process violation with regard to both the initial summary suspension and the formal suspension issued after the hearing before Dr. Curme.

The alleged facts demonstrate that at both stages of the disciplinary proceedings, Plaintiffs were given both notice and an opportunity to be heard. The Amended Complaint appears to attack the sufficiency of the hearings, or to allege that Plaintiffs were not given a meaningful opportunity to be heard. Plaintiffs seek to assert individual capacity claims against four university officials—Dr. Hodge, Dr. Mosley-Howard, Dr. Fears, and Vaughn. There is no indication that Dr. Hodge had anything to do with the suspension process. Accordingly, he could not be held liable in his individual capacity. The facts alleged indicate that Dr. Mosley-Howard, Dr. Fears, and Vaughn were involved in the summary suspension of the Fraternity, but Plaintiffs have not alleged facts that would plausibly indicate that those

individuals took any act that violated clearly established law.  With regard to the September 18, 2012 disciplinary hearing and the ultimate formal suspension, there is no allegation that Dr. Mosley-Howard, Dr. Fears, or Vaughn had anything to do with either the conduct of the hearing or the ultimate decision.  For example, though Plaintiffs allege that they were wrongfully denied a continuance and that the September 18, 2012 hearing took place without the establishment of a burden of proof, those alleged deficiencies relate to decisions or actions taken by Dr. Curme, and neither Dr. Mosley-Howard, Dr. Fears, or Vaughn may be held individually liable for those acts. As Plaintiffs failed to respond to Defendant's assertion of qualified immunity or to in any way clarify the nature of their proposed claims, Plaintiffs have not shown that they could survive a motion to dismiss on qualified immunity grounds.

Having determined that none of the claims asserted in Plaintiffs' proposed Amended Complaint could withstand a motion to dismiss, rendering the proposed amendments futile, the Court will not grant Plaintiffs leave to file the Amended Complaint.

## III.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss and **DENIES** Plaintiffs' Motion for Leave.  With the resolution of those motions, the Court has dismissed all pending claims, and this case is hereby **DISMISSED** in its entirety.

IT IS SO ORDERED.


                    ___s/Susan J. Dlott_____
                    Chief Judge Susan J. Dlott
                    United States District Court